STATE OF NORTH CAROLINA v. STEVEN DOUGLAS SCHNEIDER

No. 24A82

(Filed 13 July 1982)

1. **Criminal Law § 75— confession—properly admissible**

    Failure to advise a defendant of the nature of the charge about which he is being questioned does not render his confession inadmissible. Neither is a defendant's statement inadmissible on grounds that it was written by an officer and merely signed by the defendant. Therefore, where the record is devoid of threats, promises, or other inducements proffered to obtain the defendant's statements, and where the record does not indicate, suggest, or even hint that the conduct of any law enforcement officer was anything but exemplary, the defendant's confessions were properly admitted as evidence.

2. **Criminal Law § 91.1— denial of motion for continuance on ground defendant should have neurological examination**

    The trial court did not err in failing to grant defendant's motion for continuance made after the jury was selected but prior to impanelment where the reason for the motion was that defendant should have a neurological examination but where defendant had been determined by psychiatric evaluation to be capable of proceeding with trial and defense counsel neither disputed this finding nor argued that the defendant's capacity would be improved by a continuance.

3. **Criminal Law § 134.2— denial of postponement of sentencing—no prejudicial error**

    Where defendant was convicted of a first-degree sexual offense and first-degree burglary, and where defendant could not have received a shorter sentence, he was not prejudiced by the failure to postpone sentencing for a pre-sentence diagnostic study, neurological examination, and a full scale plenary hearing.

APPEAL by the defendant from judgments imposed by *Judge Henry L. Stevens, III*, presiding at the 23 September 1981 Criminal Session of Superior Court, JONES County.

The defendant was charged in bills of indictment, proper in form, with first-degree sexual offense and first-degree burglary. He entered pleas of not guilty and was tried before a jury which found him guilty of each offense as charged. From the judgment sentencing him to life imprisonment for the commission of first-degree sexual offense in violation of G.S. 14-27.4, the defendant appeals to this Court as of right pursuant to G.S. 7A-27. From the judgment sentencing him to imprisonment for 20 years to 30 years for the commission of first-degree burglary in violation of

G.S. 14-51, the defendant appeals to this Court on allowance of his motion to bypass the Court of Appeals, entered 19 February 1982.

*Rufus L. Edmisten, Attorney General, by William W. Melvin, Deputy Attorney General and William B. Ray, Assistant Attorney General for the State.*

*John T. Carter, Jr., Attorney for defendant-appellant.*

MITCHELL, Justice.

The defendant contends that the trial court erred in admitting into evidence his confession to the crimes charged and in refusing to continue the trial or postpone sentencing. After careful review of the record and briefs, we find the defendant received a fair trial free from prejudicial error.

The State's evidence tended to show that, on the evening of 26 June 1981, Mrs. Elizabeth Philyaw was home with her two children at their rural residence near Comfort, North Carolina. After putting the children to bed, she retired to her bedroom around midnight. For some inexplicable reason, she felt anxious. She picked up a glass rabbit from her bedside table and continued to grasp it until she fell asleep.

Suddenly she awoke. She sensed a presence in her bedroom. Reaching out, she touched a face. Upon feeling a moustache, she said, "Linwood, you scared me. That's not funny." She realized as she felt his clean-shaven chin that the man was not her husband.

"Who are you? What are you doing in my house?" she shouted.

The man then made a comment indicating he was going to have sexual intercourse with her. He spoke with a sharp northern accent. She cringed. As she drew back, she felt the glass rabbit beneath her. She swung it at him as hard as she could and hit him on the head.

"Don't do that!" He spoke rapidly. "It makes me angry. I have got a knife and I will kill your children and I will kill you."

She went limp, dropping the rabbit. "Please don't hurt my babies," she begged. Turning to her right, she noticed in his hand a long shiny knife similar to those she knew people used for hog

killings. "I will do anything you want if you won't hurt my babies."

The man then forced Mrs. Philyaw to perform fellatio. As he backed away, she leaned to her right and spat as hard as she could. He made her roll over on her stomach. Fearing she had angered him, she tried to decide which window to try to use for escape. She then realized that he had left the room. After waiting a few moments, she ran to the front door.

She unlocked the door and ran out across an open field to her neighbor's house. She awakened her neighbor Clifton "Click" Philyaw, his wife Florence, and their son Craig. Craig took down a twelve-gauge shotgun from the gun rack and ran outside. He heard a car crank. A part-time mechanic, he recognized it as having a four cylinder engine. He got in his pickup truck and shouted for his father. They pursued taillights down the road toward Trenton.

The car they were following had one taillight brighter than the other. They kept in sight. When it passed another car, they also passed and swung in behind it. The car was a red Datsun B-210 with black stripes and was occupied by a white male. Click Philyaw copied the car's license number, VYZ-586, on the truck's fogged-up windshield. He later copied the license number on a Sugar Mountain guest parking ticket.

After the men left, Elizabeth Philyaw put on one of Florence Philyaw's housecoats. As she dressed, she realized she had a hair in her mouth. She removed the hair and put it on the kitchen counter.

Agent Larry W. Smith of the North Carolina State Bureau of Investigation investigated the crime. He took from the crime scene bloody sheets and pillowcases, the glass rabbit, and the hair Mrs. Philyaw found in her mouth. He ascertained by means of the Department of Motor Vehicles that the license number VYZ-586 was assigned to a Datsun registered to the defendant, Steven Douglas Schneider of 2 Edith Drive, Jacksonville.

On the afternoon of 27 June 1981, Agent Smith visited the defendant at his residence. He observed a red Datsun B-210, license number VYZ-586, in the driveway. He asked the defendant about the car and the defendant admitted that the car had been

in the Trenton area the night before. In response to further questioning the defendant stated that he knew nothing about a burglary on Highway 41 and that he had not received any injuries to his head.

Agent Smith asked the defendant to pull back the hair over his forehead. Agent Smith then realized the defendant was wearing a hairpiece.

Later that evening, the defendant came to the Onslow County Sheriff's Department. At Agent Smith's request, he removed his hairpiece. He had a fresh cut and bump on top of his head.

Agent Smith then advised the defendant of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). The defendant stated that he would answer questions without an attorney present. Agent Smith asked several questions regarding the time the defendant arrived in Trenton the preceding morning. His fourth question was, "Mr. Schneider, explain to me what you were doing on Highway 41 at 1:30 in the morning." The defendant was silent, so he repeated the question. The defendant stated: "I'm guilty." Agent Smith asked him what he was guilty of, and the defendant replied that he had broken into a house on Highway 41. He gave further details indicating it was the Philyaw residence. He also admitted he made the victim perform fellatio upon him. Agent Smith informed the defendant that he was under arrest for first-degree sexual offense. The interview ended at 7:15 p.m.

Agent Smith took the defendant to Onslow County Memorial Hospital. With the defendant's consent, a blood sample was taken from his arm.

The defendant was transported to the Jones County Sheriff's Department at approximately 9:30 or 10:00 p.m. After being allowed to eat fried chicken and french fries, the defendant was once again advised of his constitutional rights. He signed a rights waiver form. When asked for a written statement, the defendant replied that he could not write, but stated that he did not object to Agent Smith writing down his answers. The defendant repeated his story and signed the statement as transcribed by Agent Smith. The statement, which substantially comported with the defendant's previous oral confession, was signed at 12:26 a.m. on 28 June 1981.

At trial, the defendant's written confession was introduced and Agent Smith testified as to the substance of the defendant's oral confession. Scientific evidence was admitted which indicated that the hair found in Mrs. Philyaw's mouth was microscopically consistent with the defendant's pubic hair. Further evidence indicated that the blood found on the sheets, pillowcases, and glass rabbit was consistent with that of the defendant and inconsistent with that of Mrs. Philyaw.

The defendant presented no evidence.

[1] The defendant first assigns as error the denial of his motion to suppress his confessions and the subsequent introduction of these confessions into evidence at his trial. The standard for judging the admissibility of a defendant's confession is whether it was given voluntarily and understandingly. *State v. Pruitt,* 286 N.C. 442, 212 S.E. 2d 92 (1975). Voluntariness is to be determined from consideration of all circumstances surrounding the confession. *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511 (1968). The defendant generally objects that the totality of the circumstances surrounding his confession indicates oppression or coercion and specifically characterizes as suspect two actions of Agent Smith.

With regard to the defendant's contentions concerning the two specific actions of Agent Smith, we hold both such practices to be constitutionally valid. Failure to advise a defendant of the nature of the charge about which he was being questioned does not render his confession inadmissible. *State v. Carter,* 296 N.C. 344, 250 S.E. 2d 263, *cert. denied,* 441 U.S. 964, 60 L.Ed. 2d 1070, 99 S.Ct. 2413 (1979). Neither is a defendant's statement inadmissible on grounds that it was written by an officer and merely signed by the defendant. Although this was not the most accurate and objectively neutral method of transcribing the defendant's statement, the defendant was provided adequate opportunity and in fact did thoroughly cross-examine Agent Smith in regard to the accuracy of the transcription.

In regard to the defendant's general objection, we also find no reversible error. The size of the room and number of officers present involved circumstances closely analogous to those in *State v. Rook,* 304 N.C. 201, 283 S.E. 2d 732 (1981). Further facts surrounding the confession and supporting a finding of its voluntariness have previously been set forth in this opinion. It suffices

to say that the record is devoid of threats, promises, or other inducements proffered to obtain the defendant's statements, and nowhere does the record indicate, suggest, or even hint that the conduct of any law enforcement officer was anything but exemplary. The defendant's confessions were properly admitted as evidence.

[2] The defendant next assigns as error the refusal of the trial court to grant his motion for continuance made after the jury was selected. The decision whether to grant a motion for continuance is a matter within the sound discretion of the trial judge and, absent an abuse of such discretion, will not be disturbed on appeal. *State v. Tolley*, 290 N.C. 349, 226 S.E. 2d 353 (1976). Prior to impanelment of the jury, defense counsel moved for a continuance, stating that his client should have a neurological examination. Counsel contended that the defendant had suffered from severe headaches and insomnia for approximately three weeks preceding the trial. Counsel argued that, according to a Dr. Sonic of the Neuse Mental Health Clinic in New Bern, the original psychiatric evaluation of the defendant at Dorothea Dix Hospital should have included a neurological examination. Yet defense counsel further stated that Dr. Sonic had told him that such a neurological examination would not likely reveal any tumor, malignant or benign. The defendant had been determined by psychiatric evaluation to be capable of proceeding with trial. Defense counsel neither disputed this finding nor argued that the defendant's capacity would be improved by a continuance. Defense counsel admitted that the defendant was capable of communication with his attorney and did not argue that this capability would be facilitated by a neurological examination. The sole basis for the motion, in the words of the defense attorney, was that "this is a stone that needs to be turned before we proceeded further in this case." In view of these circumstances, we find no abuse of discretion in the denial of the defendant's motion to continue.

The defendant's third assignment of error is that the trial court erred in refusing to dismiss or reduce the charges at the close of the State's evidence and at the close of all evidence on grounds of insufficiency of the State's evidence to prove the defendant's guilt beyond a reasonable doubt. The defendant concedes in his brief that if this Court finds the defendant's state-

ment to be admissible as voluntarily and understandingly given, then the evidence would be sufficient to carry the case to the jury. For the reasons previously enunciated, we so find.

[3] The defendant's final assignment of error is that the trial court denied the defendant a postponement of sentencing. The defendant contends that he was entitled to a pre-sentence diagnostic study, neurological examination, and a full-scale plenary hearing. As applicable to this case, the law mandated life imprisonment upon conviction of first-degree sexual offense. The sentence imposed for the first-degree burglary ran concurrently with the sentence for the first-degree sex offense. Because the defendant could not have received a shorter sentence, he was not prejudiced by the failure to postpone sentencing. Additionally, the record is devoid of any evidence tending to indicate that a postponement of sentencing for further examinations would have revealed anything not already disclosed by the previous psychiatric evaluation of the defendant. As previously indicated, the evidence was to the contrary.

For the reasons enunciated herein, we find the defendant to have had a fair trial, free from prejudicial error.

No error.