STATE OF NORTH CAROLINA v. KENNETH EUGENE COFFEY

No. 137A96

(Filed 10 February 1997)

**1. Criminal Law § 761 (NCI4th Rev.)— noncapital first-degree murder—instructions—finding evidence true beyond reasonable doubt—no prejudice**

There was no plain error in a noncapital first-degree murder prosecution where defendant contended that the trial court erred by instructing jurors that they must unanimously find beyond a reasonable doubt that the evidence was true before they could consider it in determining defendant's guilt or innocence. It would appear that the trial judge was merely referencing the weighing process which must occur during jury deliberations; assuming that the trial court inaccurately described the weighing process, the instructions when read as a whole and in context reflect that the judge fairly advised the jury of every element of the offense charged and provided a correct statement of the law, and there was substantial evidence to support the verdict.

**Am Jur 2d, Trial §§ 1203, 1370, 1376.**

STATE v. COFFEY

[345 N.C. 389 (1997)]

**2. Evidence and Witnesses §§ 1222, 1235 (NCI4th)— defendant's statements during and after polygraph—not an interrogation—right to counsel not denied**

The trial court did not err in a noncapital first-degree murder prosecution by not suppressing statements made during and after a polygraph exam where defendant contended that the statements were obtained in violation of his Fifth and Sixth Amendment rights to counsel. Although there is no question that defendant was in custody at the time the statements were made, he was not being interrogated at that time. Since there was no interrogation, his rights to counsel were not violated. Even assuming that defendant was being interrogated, there is competent evidence in the record to support the trial court's finding of fact that defendant initiated the conversation with the SBI agent and the detective, and that finding is binding on appeal.

**Am Jur 2d, Criminal Law §§ 793-795, 797; Evidence § 749.**

**What constitutes "custodial interrogation" within rule of *Miranda v. Arizona* requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.**

**Admissibility in evidence of confession made by accused in anticipation of, during, or following polygraph examination. 89 ALR3d 230.**

**3. Evidence and Witnesses § 1339 (NCI4th)— noncapital first-degree murder—defendant's statements to officers— conclusion of voluntariness—supported by findings and evidence**

A noncapital first-degree murder defendant's statements to officers were voluntarily and knowingly made, under the totality of the circumstances, where the trial court's conclusion was fully supported by findings based on competent testimony, including defendant's testimony that his statement was made knowingly and willingly and was true.

**Am Jur 2d, Evidence §§ 723, 728, 742.**

**STATE v. COFFEY**

[345 N.C. 389 (1997)]

4. **Evidence and Witnesses § 162 (NCI4th)— noncapital first-degree murder—unrelated threats by defendant— admissible**

The trial court did not err in a noncapital first-degree murder prosecution by admitting as corroborative evidence a witness's statement to an investigating officer that she had initially been too afraid to give information to an investigating officer because of a prior threat of violence from defendant arising from an eviction. Although defendant contends that the testimony concerning the statement was not necessary to prove any material fact and was unfairly prejudicial, it would have been reasonable for the jury to have raised questions about the failure of the witness to give information about the case to the SBI agent and the statement corroborates her in-court testimony that she did not want to get involved because she was scared. There was no abuse of discretion in the trial judge's determination that the danger of unfair prejudice did not outweigh its probative value.

**Am Jur 2d, Evidence §§ 340-342.**

5. **Evidence and Witnesses § 3126 (NCI4th)— noncapital first-degree murder—witness afraid of defendant—hearsay statement—admitted as corroboration**

The statement of a witness to an officer was not inadmissible hearsay in a capital murder prosecution where the statement was not offered to prove the truth of the matter asserted, but merely to strengthen the credibility of the witness's testimony that she had not talked with an SBI agent because she was afraid of defendant due to an unrelated incident. N.C.G.S. § 8C-1, Rule 801(c).

**Am Jur 2d, Evidence §§ 661, 667; Witnesses § 1001.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Downs, J., at the 27 November 1995 Criminal Session of Superior Court, Watauga County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 14 October 1996.

*Michael F. Easley, Attorney General, by James P. Erwin, Jr., Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

ORR, Justice.

This case arises out of the murder of Marvin "Coy" Hartley, who was found beaten to death in his home on 8 December 1994. Defendant was indicted for this crime on 20 February 1995 and was tried noncapitally before a jury. The jury returned a verdict finding defendant guilty of first-degree murder. The trial court imposed a mandatory sentence of life imprisonment for this conviction.

After consideration of the assignments of error brought forward on appeal by defendant and a thorough review of the transcript of the proceedings, the record on appeal, the briefs, and oral arguments, we conclude that defendant received a fair trial, free from prejudicial error. For the reasons set forth below, we affirm his conviction and sentence.

At trial, the State's evidence tended to show the following: Larry Grimes testified that he lived with his wife in Greenway Trailer Park in Boone, North Carolina, and that the victim, Coy Hartley, lived alone in a trailer two doors down from them. Grimes testified that he delivered leftover food to Hartley nearly every day. Around 6:30 p.m. on 8 December 1994, Grimes went to Hartley's trailer to bring him some food, and after Hartley failed to answer the door, Grimes entered through the unlocked door. Upon entering the trailer, Grimes discovered Hartley lying face down on the floor in the living room. When Hartley did not respond, Grimes returned to his own trailer and called 911.

Gary Taylor, one of the EMTs who responded to the call, testified that there was "a large, massive amount of blood" underneath Hartley's face. He further testified that he could find no vital signs and that "[Hartley] had already expired." Taylor returned later to assist in removing the body, and when the body was rolled over, severe wounds to the face and head were discovered.

Dr. Brent Hall, a medical expert in the field of pathology, testified that during his autopsy on the body of Coy Hartley, he observed multiple bruises and lacerations on the head and upper chest. Dr. Hall determined that, in his opinion, the cause of death was blunt traumatic injury to the head.

Officer Randall Rasnak, a patrolman with the Boone Police Department, testified that during December 1994, while working a night shift, he and Officer Hayes responded to a call at the Longview

Motel concerning a fight. When Officer Rasnak and Officer Hayes arrived at the scene, they observed defendant and Bobby Bragg, both of whom were intoxicated. The officers proceeded to search both men and recovered a knife and a white athletic sock containing a chrome trailer-hitch ball from Bragg's coat pocket. When Officer Rasnak asked whether the trailer ball had been used as a weapon, Bragg indicated that he had just found it and placed it in the sock. A bottle of alcohol was recovered from defendant, but no weapon was found on him. Both Bragg and defendant were transported to the Watauga County Sheriff's Department for a twenty-four-hour hold and were subsequently released.

Detective Shook testified that he and several other officers interviewed residents of the trailer park concerning what they had observed there on the day of Hartley's murder. Several witnesses gave descriptions matching that of defendant and Bragg, stating that they had been seen in the area on the day of the murder. On the day after the body was found, Detectives Shook and Harrison spoke with defendant's father, who directed them to defendant's residence, where they found defendant. Defendant accompanied the officers to the police department, where he was interviewed for five hours. Defendant told police that he and Bragg had been at the victim's trailer the day of the murder. Defendant further stated that Bragg had hit Hartley with a trailer-hitch ball in a sock and had taken Hartley's billfold. After witnessing this, defendant testified that he ran from the trailer.

On the basis of the statements made by defendant, Bragg was arrested on 10 December 1994 in Mountain City, Tennessee. Subsequently, on 6 January 1995, defendant was arrested for a probation violation. After being questioned for several hours concerning Hartley's death, defendant was then also charged with the murder.

SBI polygraph examiner Jonathan Jones testified that on 21 March 1995, defendant was brought into his office in Hickory, North Carolina, for a polygraph examination. Prior to the administration of the polygraph, defendant made a statement to Agent Jones concerning the murder.

After the polygraph was administered, defendant then made another statement to Detective Shook describing the events which unfolded on 8 December 1994. He told Detective Shook that upon returning home from the liquor store that afternoon, he met Bobby

Bragg. Bragg planned to take Hartley's money after getting him drunk, and defendant reluctantly agreed to go along with this plan. Upon entering the trailer, Hartley ordered Bragg out, and defendant proceeded to hit Hartley in the face twice. Bragg then also began hitting Hartley with the trailer ball. Hartley eventually fell to the floor, and the wallet fell out of his back pocket. Bragg took the wallet and attempted to give defendant some money from the wallet. He told defendant that he better not say anything or he would regret it. Defendant took the money and left.

Defendant also presented evidence at trial. John Combs testified that he worked at an ABC store in Boone and that he knew both defendant and Hartley. He testified that it was common for Hartley to visit the store once or twice daily, buying a pint of "Popov" vodka on each visit. On the day of the murder, defendant entered the store sometime in the evening and said that Coy Hartley had sent him. He then inquired as to what brand of liquor Hartley bought. Defendant purchased a pint of "Popov" vodka and then left the store.

Defendant's father, Jack Coffey, testified that he worked in a plant in Lenoir for a year and a half and occasionally did some landscaping. He stated that defendant's mother had been committed to Broughton Hospital three or four times. He further testified that defendant began drinking when he was very young and had been committed a number of times to institutions.

William Eller testified that he was director of guidance at Watauga High School. He stated that defendant was in special education classes in 1979 when he was in the ninth grade. Defendant had attended school for a year and a half, but his enrollment after that was erratic. Eller further testified that defendant had a tested IQ of 75 in 1979 and was classified as "educable mentally handicapped."

Jim Thornton testified that he was director of the Substance Abuse Unit at New River Mental Health. He stated that he first met defendant in 1990 when defendant was an outpatient and that he had worked with defendant on and off since then.

## I.

[1] Defendant's first assignment of error involves the trial court's instructions to the jury. Defendant contends that the trial court erred by instructing the jurors that they must unanimously find beyond a reasonable doubt that the evidence was true before they could consider it in determining defendant's guilt or innocence. Defendant

**STATE v. COFFEY**

[345 N.C. 389 (1997)]

argues that the instructions distorted the reasonable doubt standard and the proper allocation of the burden of proof.

The trial court instructed the jury as follows:

> This being a criminal case, alleged to be, and the defendant having entered a plea of not guilty, he, the defendant, is presumed to be innocent. He's not required to prove his innocence. The burden is upon the State, the charging party, to satisfy you, the jury, of the defendant's guilt to the charge he's facing from the evidence to the extent of beyond a reasonable doubt.

> A reasonable doubt is a doubt that's based upon reason and common sense arising out of some or all of the evidence that's been presented or lack of that evidence, whichever the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt to the charge he is facing.

After properly instructing the jury on the State's burden of proof and the definition of reasonable doubt, the trial judge continued as follows:

> In order to resolve whatever conflicts exist in the testimony and then after making that resolution, determining the importance of evidence, the jury is empowered with two particular aspects of discretion, absolute discretion, in regard to the evidence.

> First, the jury can believe or disbelieve some, none or all of the various testimonies you've heard. Even though each and every witness has been under oath, you can disregard that. *Believe some, none or all and then based upon what you believe, the jury also then has the discretion to decide how important that evidence is when you decide that it is believable because once you unanimously decide that certain evidence is believable to the extent of beyond a reasonable doubt, then you['ve] got to weigh it, one aspect of it against the other to decide it's [sic] importance.* That's weighing the evidence.

> . . . .

> . . . So, you use your common sense rules. You use the criteria that I've given you and then based upon that process, determine how much, if any or all the testimonies you're going to believe or disbelieve. *Then based upon what you believe to the*

> *extent of beyond a reasonable doubt, from that you find the facts.*

(Emphasis added.)

In the present case, defendant contends that these instructions prevented the jurors from considering the evidence unless they unanimously found it to be true beyond a reasonable doubt. Arguably, the trial judge, in instructing that "once you unanimously decide that certain evidence is believable to the extent of beyond a reasonable doubt," is referring to the jury's duty to determine whether or not defendant is guilty of the charge based on the evidence beyond a reasonable doubt. Obviously, at some point during the trial, the jury must decide that the evidence is believable beyond a reasonable doubt in order to make its determination that defendant is guilty of the charge. Here, it would appear that the trial judge was merely referencing the weighing process which must occur during jury deliberations.

Defendant did not object at trial to the instructions to which he now assigns error. As a result, we hold that he has waived his right to appellate review of the question except under the "plain error" standard set forth in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). To find plain error, "the error in the trial court's jury instructions must be 'so fundamental as to amount to a miscarriage of justice or [such that] probably resulted in the jury reaching a different verdict than it otherwise would have reached.'" *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)). Further, "[o]nly in a 'rare case' will an improper instruction 'justify reversal of a criminal conviction when no objection has been made in the trial court.'" *State v. Weathers*, 339 N.C. 441, 454, 451 S.E.2d 266, 273 (1994) (quoting *State v. Odom*, 307 N.C. at 661, 300 S.E.2d at 378).

Assuming *arguendo* that the trial court inaccurately described the weighing process of the evidence, we do not find that the trial court's instructions rise to the level of plain error. As this Court has previously held, no reversal will occur when the trial court's instructions, read as a whole and considered in context, reflect that the judge fairly advised the jury of every element of the offense charged and provided a correct statement of the law. *State v. Smith*, 311 N.C. 287, 290, 316 S.E.2d 73, 75 (1984). In its opening remarks, the trial court made it clear that defendant is entitled to a presumption of

innocence and is not required to prove his innocence. The trial court further stated that the State bears the burden of satisfying the jury "of the defendant's guilt . . . from the evidence to the extent of beyond a reasonable doubt." The trial court also correctly instructed the jury on every element of the offense charged. Thus, any error in the trial court's instructions is "not so fundamental as to amount to a miscarriage of justice." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

Moreover, there was substantial evidence to support the verdict in this case. Defendant's confession, which was admitted into evidence, contained statements in which defendant admitted to striking the victim in the face twice and taking money from the victim. The jury subsequently found defendant guilty of felony murder. Felony murder is defined as:

> A murder which shall be . . . committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree . . . .

N.C.G.S. § 14-17 (Supp. 1994). Here, the jury found that defendant had committed the underlying felony of robbery with a dangerous weapon. In light of the substantial evidence in this case supporting the verdict, that the jury would have reached a different result had the trial court not given this instruction is improbable. Therefore, we overrule this assignment of error.

## II.

[2] Defendant next assigns as error the trial court's failure to suppress statements defendant made during and after a polygraph examination administered by an SBI agent. Defendant contends that the trial court committed reversible error by denying his motion to suppress the statements because they were obtained in violation of his Fifth and Sixth Amendment rights to counsel. We find this contention to be without merit.

A hearing was held on defendant's motion to suppress, outside the presence of the jury. Both the State and defendant presented evidence and exhibits relevant to the evidence. The trial court's pertinent findings of fact, which defendant concedes were based on the evidence before it, are as follows:

STATE v. COFFEY

[345 N.C. 389 (1997)]

The defendant through his then attorneys requested the District Attorney to set up a polygraph examination of the defendant by the, by a member of the State Bureau of Investigation qualified to administer such polygraph.

That both attorneys signed the request by the District Attorney to the State Bureau of Investigation.

Neither attorney expressed any desire to accompany the defendant to the site of the polygraph and after the polygraph was administered and completed and both attorneys [were] informed that the defendant had made some statement that could have been construed to be inculpatory during that examination. Neither attorney expressed any surprise that they weren't asked to attend with the defendant for that test.

The only concern that was raised was that there was an interrogation type process versus general questions to ascertain the defendant's truthfulness by way of a polygraph examination.

. . . .

That upon being removed from his cell and taken to the vehicle for transportation to Hickory, the defendant told the deputy accompanying him that he wanted to call his attorney and that the deputy declined because it was policy of the Sheriff's office not to allow any telephone calls when a prisoner was being transported from the Watauga Jail facility to any other facility.

. . . .

That upon arriving at the State Bureau of Investigation office where the polygraph was to be administered, the defendant was advised of his Miranda rights . . . , and he did not invoke any of those rights. Further, that he acknowledged that he understood them and further, that he waived all of them.

That during the course of the examination with the polygraph operator, the defendant informed the polygraph operator that he had not told an officer the truth in some previous statement. This was made in response to the question as to whether or not he had any questions about the administration of the test. He was then asked as to what it was that he had not said that was the truth[,] to which he made a response that he would make a statement, but he would talk to Detective Shook only.

**STATE v. COFFEY**

[345 N.C. 389 (1997)]

That he completed the polygraph examination and after that, Detective Shook then made inquiry of the defendant on a one on one basis and wrote down what the defendant said and read it back to him as he wrote it down.

At the end of that session, the defendant decided that he would not sign the statement rather than contact his attorneys.

His statement was not taped. The defendant was not coerced. His response to all questions throughout the day, including the time that he made the statement to Officer Shook, were responsive to the questions asked except for the responses to the questions that Agent Jones asked him wherein the defendant continued to reinitiate the topic that he had been untruthful in some prior statement he had made to officers.

During the process of the questions and/or answers, the defendant acknowledged that he had two attorneys and the defendant testified at this voir dire hearing and further stated that what he said to Detective Shook was knowingly and willingly made and, further, that what he said was true.

The trial court then made several conclusions of law based on the findings of fact. Based on those conclusions and considering the totality of the circumstances, the trial court concluded that "any statement that the defendant made to Officer Shook was knowingly and voluntarily made and understandably made." The trial court further concluded that no provision of the United States Constitution or the North Carolina Constitution had been violated.

Defendant argues that his invocation of the right to counsel in the face of impending interrogation was not honored and that the trial court erred in concluding that none of defendant's constitutional rights had been violated. Defendant relies on the rules enunciated in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378 (1981), in support of this contention.

In *Miranda v. Arizona*, the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination gives rise to a right to the presence of counsel during custodial interrogation. 384 U.S. 436, 16 L. Ed. 2d 694. If during the course of a custodial interrogation a suspect requests an attorney, all questioning must cease until an attorney is present, *Minnick v. Mississippi*, 498 U.S.

146, 152, 112 L. Ed. 2d 489, 498 (1990), or "the accused himself initiates further communication, exchanges, or conversations with the police," *Edwards v. Arizona*, 451 U.S. at 485, 68 L. Ed. 2d at 386. In *Michigan v. Jackson*, 475 U.S. 625, 89 L. Ed. 2d 631 (1986), the United States Supreme Court held that the rule in *Edwards*, although decided under the Fifth Amendment, applies with at least equal force to situations involving the Sixth Amendment. Thus, defendant claims both his Fifth and Sixth Amendment rights were violated.

In this case, there is no question that defendant was in custody at the time the statements were made. The key inquiry therefore becomes whether defendant was being "interrogated" at the time he made his statements. The United States Supreme Court defined "interrogation" in *Rhode Island v. Innis*, 446 U.S. 291, 302, 64 L. Ed. 2d 297, 308 (1980), stating that interrogation is not only express questioning by the police, but also includes any "words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response from the suspect."

In the present case, based upon the evidence presented at trial as well as the trial court's findings of fact and conclusions of law, we conclude defendant was not being interrogated at the time he made the incriminating statements. Agent Jones testified at the suppression hearing that during the pretest phase of a polygraph examination he explains to the person who is going to take the test each and every step that will occur during the polygraph examination. Upon explaining the polygraph procedures to defendant, Agent Jones testified that defendant stated that he did not tell the officers the truth about the money. Agent Jones then inquired as to what defendant did not tell the truth about. At that time, defendant made a statement that he was handed the money by Bragg and that Bragg just "went off." Agent Jones testified that he did not follow up with any questions, but proceeded with the polygraph.

Once the polygraph was completed, Agent Jones reminded defendant he was still under arrest and who his attorneys were. Agent Jones then informed defendant that he had not passed the polygraph in reference to planning to rob Hartley and beating him. At that time, defendant made an incriminating statement to Agent Jones. After making the statement, Agent Jones then asked defendant if he would be willing to talk to one of the detectives. Defendant said he was willing to talk to Detective Shook and repeated the statement he had made to Agent Jones. This statement was reduced to writing and

signed by Agent Jones and Detective Shook. Defendant, however, refused to sign it.

The above evidence supports the conclusion that defendant was not being interrogated at the time he made either statement. Defendant's attorneys had requested that a polygraph examination be given, and defendant was given the proper *Miranda* warnings before the test was administered. Defendant's statements were not made in response to questioning initiated by law enforcement officers, but were volunteered by defendant himself. As the United States Supreme Court stated in *Edwards*:

> Had Edwards initiated the meeting . . . nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial. The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. *Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver.*

*Edwards v. Arizona*, 451 U.S. at 485-86, 68 L. Ed. 2d at 386 (emphasis added). Since defendant was not subjected to custodial interrogation, his Fifth Amendment right to have counsel present was not violated. Similarly, since there was no interrogation, defendant's Sixth Amendment right to counsel was not violated. *See Michigan v. Jackson*, 475 U.S. 625, 89 L. Ed. 2d 631.

Further, even assuming *arguendo* that defendant was being interrogated at the time he made the incriminating statements, the trial court correctly concluded that defendant initiated the communication with the law enforcement officers. An accused in custody who requests counsel is not subject to further questioning until counsel has been made available to him, unless the accused himself initiates further communications with the police. *Edwards v. Arizona*, 451 U.S. at 485-86, 68 L. Ed. 2d at 386. Here, the trial court concluded that "defendant reinitiated and continued to reinitiate the conversation regarding whatever his participation was in the crime that he is charged with in this case." Because there is competent evidence in the record to support the trial court's finding of fact that defendant initiated the conversation with Agent Jones and Detective Shook, we are bound by this finding. *State v. Ross*, 329 N.C. 108, 123, 405 S.E.2d 158, 166 (1991).

STATE v. COFFEY

[345 N.C. 389 (1997)]

**[3]** Having found no violation of defendant's Fifth or Sixth Amendment rights, we must next determine whether, under the totality of the circumstances, defendant's statements were voluntarily and knowingly made. *See State v. Schneider*, 306 N.C. 351, 293 S.E.2d 157 (1982). The trial court concluded that "any statement that the defendant made to Officer Shook was knowingly and voluntarily made and understandably made." This conclusion is fully supported by the findings of fact, which are based on competent testimony. Defendant himself testified to the following:

Q Did you knowingly and willingly give this statement to, to the officers?

A The one I gave to Mr. Shook, yes, I did.

Q Are the things that you told him true?

A Yes, sir.

Thus, we hold that the trial court properly concluded that defendant's statements were knowingly and willingly given. For all the foregoing reasons, we hold that the trial court correctly concluded that defendant's rights under the Fifth and Sixth Amendments were not violated and, therefore, correctly denied the motion to suppress defendant's statements.

### III.

**[4]** Defendant's final assignment of error concerns the admission of a witness's statement given to an investigating officer as corroborative evidence. Defendant argues that Detective Shook's testimony concerning Linda Nelson's out-of-court statement about her fear of defendant was not necessary to prove any fact material to the State's case and was unfairly prejudicial. Defendant further asserts that the testimony of Detective Shook concerning Nelson's statement constituted impermissible hearsay. We disagree.

Linda Renee Nelson, a material witness in this trial, testified concerning the activities of the victim, defendant, and Bragg up until moments before the murder occurred. In the course of her testimony, it was revealed that the first officer to question her was Agent Steve Wilson with the SBI. Nelson gave the following testimony concerning her response to questioning by Agent Wilson:

Q Okay, someone named Wilson from the S.B.I. Did you tell him—what did you—did you tell him what you've told us here today?

STATE v. COFFEY

[345 N.C. 389 (1997)]

A  Some of it. I was kind of afraid to talk to him.

Q  Why were you afraid, ma'am?

A  Because I really didn't want to get involved. I was scared.

Subsequently, during the direct examination of Detective Shook, the prosecutor asked him to read a statement he took from Nelson during the investigation into Hartley's death. Defense counsel objected, and the trial court instructed that the statement would be received only to corroborate Nelson's testimony. The following is a portion of her statement which was admitted and to which defendant objects:

On Friday morning, SBI Agent Wilson came by her trailer and Linda states that she told Mr. Wilson that she saw Kenneth Coffey, but when Mr. Wilson told her that there had been a murder, she was too scared to say anything else. Linda said that she has known Kenneth Coffey about two years and Kenneth and his girl-friend named Rhoda got evicted by Mike Garlock and Kenneth thought that she had said something to Mike and the time was around [July of 1994] and Kenneth came over to her trailer, bang-ing on it and he said that he knew that she had called Mike and he would beat her God damn brains and if she didn't stop . . . .

A witness's prior out-of-court statement may be admitted to cor-roborate the witness's courtroom testimony. *State v. Holden*, 321 N.C. 125, 143, 362 S.E.2d 513, 526 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Corroborating statements are admissible only when they are in fact consistent with and substantially similar to the trial testimony. *State v. Harrison*, 328 N.C. 678, 681-82, 403 S.E.2d 301, 304 (1991). "In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony." *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986).

In the present case, it would have been reasonable for the jury to have raised questions about the failure of Nelson to give information about this case to SBI Agent Wilson. The statement corroborates Nelson's in-court testimony that she really did not want to get involved because she "was scared." Further, the explanation con-tained at the end of the statement given to Detective Shook clarifies Nelson's reasons for initially refusing to discuss the matter and, thus, strengthens or adds credibility to the testimony of the witness.

Even if the testimony is admissible as corroborative, the trial court still must determine whether its probative value outweighs the danger of unfair prejudice to defendant. N.C.G.S. § 8C-1, Rule 403 (1986). Defendant argues that the evidence of the specific act of threatened violence by defendant was unfairly prejudicial. This Court has adopted the test currently applied to Federal Rule of Evidence 403 that "[w]hether or not to exclude evidence under [Rule 403] is a matter within the sound discretion of the trial judge." *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). In the present case, we find no abuse of discretion.

[5] Defendant also contends that the statement was inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1986). Detective Shook's testimony was not offered to prove the truth of the matter asserted, but was offered merely to strengthen the credibility of Nelson's testimony. For the reasons stated above, we hold that the trial court did not err in permitting the State to introduce Detective Shook's testimony regarding Nelson's statement. Accordingly, this assignment of error is overruled.

Having reviewed each of defendant's assignments of error brought forward on appeal, we conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.