STATE OF NORTH CAROLINA,
v.
CARL McKINLEY MOODY, Defendant.
No. COA09-769.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General David Gordon, for the State.
Michael E. Casterline for defendant-appellant.
GEER, Judge.
Defendant Carl McKinley Moody appeals from his convictions of two counts of first degree sexual offense with a child, one count of second degree sexual offense, one count of statutory sexual offense of a person who is 13, 14, or 15 years old, and three counts of indecent liberties with a minor. Defendant contends the trial court erred in denying his motion to suppress an inculpatory statement he made on 27 October 2006. Because the trial court's unchallenged findings of fact support its conclusion that defendant's statement was voluntary and not the product of a custodial interrogation, we find no error.

Facts
On 24 October 2006, C.M., who was 17 years old, and M.M., who was 15 years old, told their mother that defendant, their father, had been sexually abusing them. They reported that their father, in the guise of teaching them about sexual positions, had participated in various sexual acts with them, including giving and receiving oral sex, from the time C.M. was 11 and M.M. was 12.
On 25 October 2006, C.M. and M.M. were interviewed by Detective Longpre at the Burke County Sheriff's Department. C.M. and M.M. repeated their allegations that defendant had been sexually abusing them since they were 11 and 12 years old, respectively. Afterwards, Detective Longpre and Sergeant Corriveau went to defendant's home. Detective Longpre told defendant that she needed to speak with him about his daughters and the fight they had had the day before.
Defendant drove his car to the Sheriff's Department, and when he arrived, he was taken to an interview room. Detective Longpre informed defendant that he was free to leave at any time, and she did not read defendant his Miranda rights. During the interview, Detective Longpre asked defendant about the allegations made by C.M. and M.M. Detective Longpre transcribed defendant's statement, which he then signed. Afterwards, Detective Longpre asked defendant to report to the Morganton Department of Public Safety at 8:30 a.m. on Friday, 27 October 2006, for a polygraph test.
On the morning of 27 October 2006, defendant asked his brother to pick him up and accompany him to the Sheriff's Department. Defendant and his brother arrived at the Sheriff's Department around 8:30 a.m. Sergeant Corriveau was notified that defendant and his brother were in the lobby. Defendant told Sergeant Corriveau that "he was there to  to talk about the allegations." The sergeant took defendant and his brother to an interview room. He then asked a secretary to contact Detective Longpre, who was waiting for defendant at the Morganton Department of Public Safety, and tell her to come back to the Sheriff's Department. The secretary subsequently called the detective and informed her that defendant and his brother "were at the department wanting to talk." Detective Longpre immediately returned to the Department and entered the secretary's office to watch defendant's interview on a closed-circuit television monitor.
Before Sergeant Corriveau started the interview, he took his gun, badge, pager, and cell phone and secured them in his office. Upon returning to the interview room, Sergeant Corriveau informed defendant that he was free to leave. The sergeant began the interview, in front of defendant's brother, by asking defendant general questions about his daughters. Sergeant Corriveau then proceeded to ask defendant if he "wanted to tell [the sergeant] anything about why he had come." Defendant responded that "he wanted to talk about his girls and what he had done." During the interview, defendant and his brother took smoke breaks unaccompanied by an officer, defendant went to the bathroom unaccompanied by an officer, and defendant "receive[d] a drink, something to eat." Defendant's brother told Sergeant Corriveau about letters defendant had written, and, around 10:00 a.m., the sergeant asked defendant's brother to retrieve the letters from defendant's home.
After defendant's brother left, Sergeant Corriveau began writing down defendant's statement, and Detective Longpre entered the interview room. Defendant's brother returned with the letters and handed them to the detective and sergeant out in the hallway. Defendant's brother did not re-join defendant in the interview room.
Sergeant Corriveau read the four-page statement to defendant. Defendant initialed the bottom of each page and signed a voluntariness disclaimer that stated he had not been coerced into making the statement. The sergeant estimated that defendant had been in the interview room approximately three and a half to four hours. After defendant signed the statement, the officers informed defendant that he was under arrest.
Prior to trial, defendant moved to suppress the statements given on 25 and 27 October 2006. After conducting a voir dire hearing on the motion, the trial court made findings of fact, concluded that defendant had not been in custody and had given the statements voluntarily, and denied the motion to suppress. A jury subsequently convicted defendant of all the charges. The trial court sentenced defendant to three consecutive presumptive-range sentences of 240 to 297 months imprisonment for the statutory and first degree sexual offense and indecent liberties convictions and a consecutive presumptive-range sentence of 100 to 129 months for the second degree sexual offense conviction. Defendant appeals.

Discussion
Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress the inculpatory statement he made to Sergeant Corriveau on 27 October 2006. Defendant first asserts that the statement is inadmissible because he made it while in police custody, and the police were, therefore, obligated to give him the warnings required under Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).
"A trial court's findings of fact following a hearing on the admissibility of a defendant's statements are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." State v. Eason, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994), cert. denied, 513 U.S. 1096, 130 L. Ed. 2d 661, 115 S. Ct. 764 (1995). The trial court's conclusions of law must be supported by the findings of fact and legally correct, "reflecting a correct application of applicable legal principles to the facts found." State v. Fernandez, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).
As the United States Supreme Court has recognized:
Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."
Oregon v. Mathiason, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714 (1977).
"[I]n determining whether a suspect was in custody, an appellate court must examine all the circumstances surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." State v. Gaines, 345 N.C. 647, 662, 483 S.E.2d 396, 405, cert. denied, 522 U.S. 900, 139 L. Ed. 2d 177, 118 S. Ct. 248 (1997). This determination is based upon "`the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" State v. Garcia, 358 N.C. 382, 396, 597 S.E.2d 724, 736 (2004) (quoting Stansbury v. California, 511 U.S. 318, 323, 128 L. Ed. 2d 293, 298, 114 S. Ct. 1526, 1529 (1994) (per curiam)), cert. denied, 543 U.S. 1156, 161 L. Ed. 2d 122, 125 S. Ct. 1301 (2005). The critical question is "whether, based upon the trial court's findings of fact, a reasonable person in defendant's position would have believed that he was under arrest or was restrained in his movement to that significant degree." Id. at 396-97, 597 S.E.2d at 736-37.
The trial court made the following findings of fact:
Then on October 27th, the defendant and his brother, Cecil Moody, appeared unannounced at the Mecklenburg  strike that  the Burke County Sheriff's Department at 8:30 in the morning and Detective  rather Sergeant Corriveau spoke to them when they arrived. Detective Longpre was not there and was, in fact, not expecting them at that location that morning.
The defendant and his brother indicated that he was there to talk and Sergeant Corriveau took them into an interview room. He removed his gun, badge, and phone and secured them and initiated conversation with the defendant about his daughters. After some general conversation he asked the defendant if he wanted to say anything about why he was there and the defendant then proceeded to make an exulp  and [sic] inculpatory statement.
During the time that the defendant was there with Sergeant Corriveau, which lasted from 8:30 and then went for approximately three and a half to four hours, the defendant was told he was free to leave. He never asked to leave. He was, however, allowed to take bathroom breaks and smoking breaks during the course of the interview and his brother was present of [sic] at least part of the interview and was allowed to take the breaks with the defendant.
After talking with the defendant Sergeant Corriveau repeated the essence of the defendant's statement back to him and then generated a written statement which is received in evidence. It appears to be on the same form as the October 25 statement and, again, it is initialed by the defendant and signed by the defendant on two pages with the same disclaimer about the voluntariness of the statement printed above his signature.
The brother at one point during the interview left to retrieve some letters that were mentioned during the course of the interview, apparently letters that the defendant had written to his daughters and his wife and his mother-in-law, and the brother left and returned with those letters and they were taken by the sergeant as evidence in the case.
And then at the conclusion of this interview the investigators, Longpre and Corriveau, charged the defendant with the charges that are pending.
On that interview the defendant, as I indicated, was accompanied by his brother. The defendant told his brother before they left for the sheriff's department that he wanted to be taken there, that he needed to get something off his chest, that he was going to kill himself.
These findings, unchallenged by defendant on appeal, support the trial court's conclusion that defendant was not in custody when he made the inculpatory statement. See Garcia, 358 N.C. at 394-96, 597 S.E.2d at 735-37 (affirming trial court's determination that defendant was not in "custody" when defendant was transported to police station at his own request, defendant was told he was not under arrest, defendant was free to move around police station unescorted, and he was interviewed by unarmed officer).
Defendant also asserts that his statement is inadmissible because it was not voluntary. "The standard for judging the admissibility of a defendant's confession is whether it was given voluntarily and understandingly." State v. Schneider, 306 N.C. 351, 355, 293 S.E.2d 157, 160 (1982). "Voluntariness is to be determined from consideration of all circumstances surrounding the confession." Id. Factors to be considered are
whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.
State v. Hardy, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994).
The trial court found that defendant was not in custody when he gave his statement; that Sergeant Corriveau removed and secured his gun, badge, pager, and phone prior to his interview with defendant; that defendant was accompanied by his brother to the Sheriff's Department and for part of the interview; that defendant went there because he wanted to talk about the allegations; that he was interviewed for three and a half to four hours; and that defendant signed and initialed his statement and signed a voluntariness disclaimer. Based on these findings of fact, we hold the trial court properly concluded defendant's statement was voluntary. See State v. Hyde, 352 N.C. 37, 45, 530 S.E.2d 281, 288 (2000) (upholding conclusion that defendant's confession was voluntary where defendant was coherent during interview, defendant testified he understood his rights and signed waiver, interview lasted two hours, and "the record is devoid of any evidence that the atmosphere was inherently coercive or intimidating"), cert. denied, 531 U.S. 1114, 148 L. Ed. 2d 775, 121 S. Ct. 862 (2001). Accordingly, we find no error.
No error.
Judges McGEE and ROBERT HUNTER, JR. concur.
Report per Rule 30(e).