STATE OF NORTH CAROLINA v. CARL LORICE BREWTON

No. 252A95

(Filed 8 March 1996)

**1. Homicide § 508 (NCI4th)— felony murder—armed robbery as predicate—no instruction on common law robbery or misdemeanor larceny**

The trial court did not err in a first-degree murder prosecution in which defendant was convicted of felony murder based on armed robbery by not charging the jury on the lesser included offenses of common law robbery and misdemeanor larceny where the State introduced substantial evidence of defendant's guilt of robbery with a dangerous weapon under an acting in concert theory. Although defendant contended that the court should have instructed on the lesser offenses because defendant testified that his accomplice returned to rob one of the victims only after they fled to a nearby field, such testimony does not establish the requisite break in time or circumstances between the taking and the use of the dangerous weapon.

**Am Jur 2d, Homicide §§ 34 et seq.**

**2. Evidence and Witnesses § 222 (NCI4th)— first-degree murder—flight**

The trial court did not err in a first-degree murder prosecution by giving the pattern jury instructions on flight where defendant ran from the scene on foot, went briefly to his mother's home in a nearby apartment complex, checked into a hotel, and surrendered the next day after learning that detectives were searching for him. These facts, taken in the light most favorable to the State, justify giving the instruction. The court correctly informed the jury that the evidence of flight could not be considered as tending to show premeditation and deliberation.

**Am Jur 2d, Evidence §§ 532-535.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing two sentences of life imprisonment entered by Beal, J., on 26 January 1995 in Superior Court, Buncombe County, upon a jury verdict of guilty of two counts of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment

STATE v. BREWTON

[342 N.C. 875 (1996)]

for robbery with a dangerous weapon was allowed 22 November 1995. Heard in the Supreme Court 12 December 1995.

*Michael F. Easley, Attorney General, by James P. Erwin, Jr., Assistant Attorney General, for the State.*

*Bob Clark for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant Carl Lorice Brewton was indicted on 6 December 1993 for the 1 November 1993 murders of Raymond Walter Cody and Linda Blanton Cody. He was tried noncapitally at the 23 January 1995 Criminal Session of Superior Court, Buncombe County. The jury found defendant guilty of premeditated and deliberate murder for the killing of Mr. Cody, robbery with a dangerous weapon of Mrs. Cody, and first-degree murder under the felony murder rule for the killing of Mrs. Cody. The trial court sentenced defendant to consecutive sentences of life imprisonment for the murders. Because the armed robbery served as the underlying predicate felony for the finding of first-degree murder as to Mrs. Cody, the trial court arrested judgment for the conviction for robbery with a dangerous weapon.

The State's evidence tended to show *inter alia* that on 1 November 1993, James Garner, Phillipio Jackson, and defendant hired a taxi in Shelby, North Carolina, for transportation to Asheville, North Carolina. Linda Cody, the driver of the taxi, was accompanied on the trip by her husband, Raymond Cody. In a statement given to police on 2 November 1993, defendant stated that Garner asked Mrs. Cody to stop the taxi when they reached a specific location in Asheville. Defendant then shot Mr. Cody and Garner shot Mrs. Cody. Defendant admitted that as he took money from Mrs. Cody's pockets, he noticed that Mr. Cody was still moving. Defendant then shot Mr. Cody a second time. At trial, the medical examiner testified that both Mr. and Mrs. Cody died as a result of gunshot wounds to the head.

At trial, defendant denied shooting the Codys. Instead, defendant testified that upon arriving in Asheville, two quick shots were fired at the victims "without any warning." Defendant testified that he did not see who fired them, but that as Garner was getting out of the taxi, Garner reached over and fired the second shot at Mr. Cody. Defendant also testified that he originally told police detectives "what he believed they wanted to hear even though it was not the truth" and

that he gave a statement in which he admitted shooting Mr. Cody because "that was what [he] was told to write."

Defendant conceded in his brief that he was unable to show error in two of the four assignments of error he raised on appeal. These two assignments of error are therefore abandoned pursuant to Rule 28(a) of the North Carolina Rules of Appellate Procedure.

[1] In another assignment of error, defendant argues that the trial court erred in charging the jury on robbery with a dangerous weapon without charging the jury on the lesser included offenses of common law robbery and misdemeanor larceny. The jury found defendant guilty of the first-degree murder of Mrs. Cody based on the felony murder theory, with robbery with a dangerous weapon serving as the underlying felony. Therefore, defendant's conviction for robbery with a dangerous weapon was merged with his conviction for the murder of Mrs. Cody. Thus, defendant directs this assignment of error only to his first-degree murder conviction for the killing of Mrs. Cody.

According to defendant's testimony at trial, he heard the first two shots without seeing who actually fired the weapon. Then defendant saw Garner fire a third shot as defendant was exiting the taxi. Defendant testified that after he and Garner fled from the taxi, they met briefly in a nearby field. Defendant testified it was only then that Garner returned to the taxi to take Mrs. Cody's money. Thus, defendant argues that there was no continuous transaction that directly related Garner's larceny to the use of a dangerous weapon. Because no continuous transaction occurred, according to defendant, the trial court erred by failing to charge the jury on common law robbery and misdemeanor larceny, both misdemeanors and lesser included offenses of robbery with a dangerous weapon. Defendant contends this improperly denied him the possibility that the jury might find him guilty of one of the lesser included misdemeanors and, as a result, acquit him of the murder of Mrs. Cody under the felony murder theory.

We conclude that the State introduced substantial evidence of defendant's guilt of robbery with a dangerous weapon under an acting in concert theory and that the trial court did not err by refusing to charge on the lesser included offenses. Before the trial court was allowed to submit robbery with a dangerous weapon under an acting in concert theory, it was required to find that substantial evidence would support a finding that Garner's use of a dangerous weapon preceded or was concomitant with the taking, "or [was] so joined by time

and circumstances with the taking as to be part of one continuous transaction." *State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992). Defendant's own statement to police the day after the murders, which was introduced at trial, supports such a finding. Defendant stated:

> Me and [Garner] and Phillipio was in the back seat. We stopped at the back of the school. We was going to take their money. I didn't know there was bullets in it, but I pulled the trigger and it shot. I don't know why [Garner] shot the woman, but he did. I went on and took her money, but the man was still moving. I thought that he would be able to tell on me, so I shot again. Then I ran.

Defendant's statement alone is substantial evidence from which the jury could reasonably conclude that Garner's shooting Mrs. Cody was concomitant with defendant's taking of her money. Thus, the trial court did not err by instructing the jury on robbery with a dangerous weapon.

Further, the trial court did not err by refusing to instruct the jury on the lesser included offenses of common law robbery and misdemeanor larceny. Even if defendant's testimony at trial that Garner returned to rob Mrs. Cody only after defendant and Garner fled to a nearby field is taken as true, such testimony does not establish the requisite break in time or circumstances between the taking and the use of the dangerous weapon. *Id.*; *accord State v. Handy*, 331 N.C. 515, 529-30, 419 S.E.2d 545, 552 (1992). Taking the evidence in the light most favorable to defendant, we conclude that the elements of violence and taking nevertheless were so joined in time and circumstances that the trial court did not err by refusing to instruct the jury on the lesser included offenses.

[2] In another assignment of error, defendant argues that the trial court erred by instructing the jury that it could consider his flight from the scene as evidence of guilt. The trial court gave the pattern jury instructions on flight. N.C.P.I.—Crim. 104.36 (1994). In support of this argument, defendant contends that "it would be human nature for anyone, let alone a sixteen year old, to flee from the scene that [defendant] said Garner had caused." Defendant also notes that he surrendered to police within twenty-four hours of the crime.

The evidence at trial tended to show that defendant ran from the scene of the murders on foot, went briefly to his mother's home in a nearby apartment complex, and then checked into a hotel where he

remained overnight. While defendant did turn himself in the following day, he surrendered only after he discovered that police detectives were searching for him. These facts, taken in the light most favorable to the State, justify the trial court's action in giving the pattern jury instructions on flight. Further, the instruction correctly informed the jury that evidence of flight, although some evidence which may be considered with other facts and circumstances in determining guilt, may not be considered as tending to show premeditation and deliberation. *State v. Myers*, 309 N.C. 78, 87, 305 S.E.2d 506, 511-12 (1983); *see also State v. Jefferies*, 333 N.C. 501, 509-11, 428 S.E.2d 150, 154 (1993) (approving of N.C.P.I.—Crim. 104.36). Thus, defendant's assignment of error is overruled.

Defendant received a fair trial free of prejudicial error.

NO ERROR.