STATE OF NORTH CAROLINA v. TOMMY LEE EUBANKS

No. COA01-1031

(Filed 16 July 2002)

**1. Evidence— other offenses—similar testimony elicited by defendant—no prejudice**

There was no prejudicial error in a murder prosecution where the court admitted testimony on direct examination tending to show that defendant had used and supplied drugs and that defendant had orchestrated a scheme to obtain refunds by returning stolen clothing. Defendant elicited similar testimony on cross-examination.

**2. Criminal Law— instruction on flight—sufficiency of evidence**

The trial court did not err in a murder prosecution by instructing the jury on flight where defendant provided no assistance to the victim after shooting him; fled the scene of the shooting and disposed of his gun; and did not voluntarily contact the police or turn himself in, but merely cooperated once he was contacted by the police.

**3. Homicide— murder—old firearm—no evidence of unintentional firing—no instruction on involuntary manslaughter**

The trial court did not err in a murder prosecution by not submitting involuntary manslaughter to the jury where defendant contended that the shooting occurred through the mishandling of an old firearm, but there was no evidence tending to show that this particular firing of the gun was unintentional. In fact, there was evidence that defendant fired the gun intentionally.

**4. Sentencing— determination of prior record level—State's worksheet—construed stipulation by defendant**

There was no error in a second-degree murder sentencing proceeding where the court determined defendant's prior record level from a worksheet prepared by the State. Although a worksheet prepared by the State is insufficient to satisfy the State's burden, statements by defendant's attorney here may be construed as a stipulation that defendant had been convicted of the charges listed on the worksheet.

Appeal by defendant from judgment entered 19 October 2000 by Judge James M. Webb in Richmond County Superior Court. Heard in the Court of Appeals 5 June 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Steven F. Bryant, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defenders Beth S. Posner and Daniel R. Pollitt, for defendant-appellant.*

HUNTER, Judge.

Tommy Lee Eubanks ("defendant") appeals the trial court's judgment sentencing him to a prison term of 240 to 297 months for second degree murder. We find no prejudicial error.

The evidence at trial tended to establish the following facts. The victim, Jimmy Quick, had been friends with defendant, despite the fact that Quick had stolen items from defendant on multiple occasions, and despite the fact that defendant had, as a result, previously taken out criminal charges against Quick and had threatened to kill Quick. On 22 January 2000, Quick was present at defendant's home, along with defendant (who was sick and in bed that day), Candy Sharpe, Wanda Smith, Donald Dawkins, and defendant's ex-wife, Betty Eubanks. The individuals were all friends and some had been smoking crack cocaine and consuming alcohol. At some point during the evening, while defendant was asleep, Sharpe, Eubanks, Smith and Quick took defendant's van. Due to heavy snow, they were unable to return defendant's van to defendant's home that evening. Sharpe called defendant, and defendant became angry and threatened to kill Quick because Quick had stolen defendant's vehicle on a prior occasion. Due to the weather, Smith and Quick spent the night at Sharpe's home.

The following day, after Smith called defendant, defendant and Dawkins (who had spent the night at defendant's home) arrived at Sharpe's home in a truck at approximately 12:45 p.m. Defendant was angry, but appeared to calm down once Smith showed defendant where the van was parked. Shortly thereafter, after returning to the kitchen of Sharpe's home, Smith heard defendant, Quick, and Dawkins talking outside. She then heard Quick scream, " 'No, Tommy Lee; no, Tommy Lee,' " and saw him run by the window. Smith heard a single gunshot, opened the door, and saw Quick laying on the ground and defendant standing nearby holding a shotgun and aiming it at Quick. Defendant said, " 'You'd better call some son of a bitch to come after this motherf---er,' " and then he and Dawkins left. Quick subsequently died as a result of the gunshot wound. At some point immediately following the shooting, defendant took the gun and hid it in his sister's house.

Richmond County Chief Deputy Sheriff Phil Sweatt arrived at the scene of the shooting and subsequently called defendant's home and left a message for him. Defendant returned Deputy Sweatt's call within minutes and asked about the severity of Quick's injuries and whether defendant had killed Quick. Defendant indicated that he was at the house of Linda Jacobs, and he agreed to meet with Deputy Sweatt and to help the police locate the gun. Deputy Sweatt and other deputies then went to Jacobs' home. Deputy Robert Lee Taylor took defendant to locate the gun, and defendant admitted that he had left

the gun at his sister's house. During the ride to defendant's sister's house, defendant said to Deputy Taylor, " 'I tried to shoot him in the ass, but I missed.' " Deputy Taylor located the gun in a closet at defendant's sister's house.

Defendant was charged and tried for the offense of first degree murder. The jury found defendant guilty of second degree murder, and the trial court entered judgment and sentenced defendant to a prison term of 240 to 297 months. On appeal, defendant has entered twenty-five assignments of error. Defendant has incorporated five of these into the four arguments in his appellate brief; defendant's remaining assignments of error are deemed abandoned. *See* N.C.R. App. P. 28(b)(6). Defendant's four arguments are: (1) the trial court erred in admitting certain testimony by Sharpe and Smith; (2) the trial court erred by instructing the jury on "flight"; (3) the trial court erred by refusing to submit the charge of involuntary manslaughter to the jury; and (4) the trial court erred in determining defendant's prior record level.

I.

**[1]** By two assignments of error, defendant argues that the trial court erred in admitting testimony by Sharpe and Smith tending to show that defendant orchestrated a scheme whereby Quick, Sharpe, Smith, and others routinely stole clothing and then obtained refunds by returning the stolen clothing, and that, in exchange for their participation in the scheme, defendant provided them with drugs, and also that defendant himself used drugs.[1] Defendant argues that this evidence should have been excluded pursuant to Rule 404(b) of the North Carolina Rules of Evidence ("Rule 404(b)") because its only purpose was to demonstrate defendant's character. However, a review of the transcript reveals that defendant elicited substantively similar testimony during cross-examination of Smith. Thus, even assuming *arguendo* that the admission of the testimony in question during the direct examinations of Sharpe and Smith constituted error, we hold that any such error was not prejudicial. *See, e.g., State v. Featherson*, 145 N.C. App. 134, 138, 548 S.E.2d 828, 831 (2001). These assignments of error are overruled.

---

1. We note that, although defendant initially assigned error to the trial court's admission of testimony by Sharpe and Smith tending to show that defendant had threatened to kill Quick on numerous prior occasions, defendant has failed to present this argument in his appellate brief and has, therefore, abandoned this specific argument.

## II.

**[2]** Defendant next argues that the trial court erred by instructing the jury on "flight" (pursuant to N.C.P.I., Crim. 104.36) over defendant's objection. It is well established that

> "[e]vidence of a defendant's flight following the commission of a crime may properly be considered by a jury as evidence of guilt or consciousness of guilt." A trial court may properly instruct on flight where there is " 'some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged.' " However, "[m]ere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension."

*State v. Lloyd*, 354 N.C. 76, 119, 552 S.E.2d 596, 625-26 (2001) (citations omitted). Defendant argues that the instruction on flight was not supported by the record because, although it was undisputed that defendant drove away from Sharpe's home shortly after the shooting, there was no additional evidence that defendant "took steps to avoid apprehension." *Id.* Furthermore, defendant argues, the prejudice resulting from the improper instruction is demonstrated by the fact that the prosecutor for the State specifically argued to the jury during his closing argument that the jury could infer defendant's intent to kill Quick from the fact that he fled the scene and hid his gun.

We disagree with defendant that the instruction was improper. The undisputed evidence established the following factors which, taken together, support an instruction on flight: (1) defendant provided no assistance to Quick after shooting him, *see id.* at 119, 552 S.E.2d at 626; (2) defendant fled the scene of the shooting and disposed of his gun, *see State v. Nixon*, 117 N.C. App. 141, 152, 450 S.E.2d 562, 568 (1994); and (3) defendant did not voluntarily contact the police or turn himself into the police but, rather, merely cooperated with their investigation once he was contacted by the police, *see State v. Brewton*, 342 N.C. 875, 878-79, 467 S.E.2d 395, 397-98 (1996). This assignment of error is overruled.

## III.

**[3]** Defendant next argues that the trial court erred by denying his request to submit the verdict of involuntary manslaughter to the jury. A defendant is entitled to have a verdict of a lesser included offense submitted to the jury if it is supported by the evidence, and in deter-

mining whether a lesser included offense is supported by the evidence, the evidence must be viewed in the light most favorable to the defendant. *See State v. Barlowe,* 337 N.C. 371, 377-78, 446 S.E.2d 352, 356-57 (1994). Involuntary manslaughter, which is a lesser included offense of murder, "is the unlawful and unintentional killing of another without malice which proximately results from an unlawful act not amounting to a felony nor naturally dangerous to human life, or by an act or omission constituting culpable negligence." *State v. Barts,* 316 N.C. 666, 692, 343 S.E.2d 828, 845 (1986). Defendant argues that a verdict of involuntary manslaughter should have been submitted to the jury because there was evidence tending to show that "the shooting occurred through the mishandling of an extremely old, indeed, antique and battered, firearm which [defendant] was negligently waving around." However, although there was evidence that the shotgun was old and, therefore, might generally have been prone to being discharged by accident, there was no evidence tending to show that this particular firing of the gun by defendant resulting in Quick's death was unintentional. In fact, there was evidence tending to show that defendant fired the gun intentionally, including evidence that defendant told Deputy Taylor that he had intended to shoot Quick in the rear end and had missed. "[W]hen all the evidence tends to show that defendant committed the crime charged and did not commit a lesser included offense, the court is correct in refusing to charge on the lesser included offense." *State v. Gerald,* 304 N.C. 511, 520, 284 S.E.2d 312, 318 (1981). We hold that the trial court did not err in refusing to submit the verdict of involuntary manslaughter to the jury. This assignment of error is overruled.

IV.

[4] Finally, defendant argues that the trial court erred in determining that defendant had twelve prior record points and a prior record level of four. The record indicates that the only evidence presented by the State was a prior record level worksheet purporting to list five prior convictions between 1958 and 1990. The following colloquy transpired immediately prior to the State's submission of this document:

THE COURT: Evidence for the State?

[THE PROSECUTOR]: If Your Honor please, under the Structured Sentencing Act of North Carolina, the defendant has a prior record level of four in this case, Your Honor.

THE COURT: Do you have a prior record level worksheet?

[THE PROSECUTOR]: Yes, sir, I do.

THE COURT: All right. Have you seen that, Mr. Prelipp [attorney for defendant]?

MR. PRELIPP: I have, sir.

THE COURT: Any objections to that?

MR. PRELIPP: No, sir.

Defendant contends that the State failed to satisfy the requirements set forth in Section 15A-1340.14(f) of our General Statutes, which provides, in pertinent part:

(f) Proof of Prior Convictions.—A prior conviction shall be proved by any of the following methods:

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction.

N.C. Gen. Stat. § 15A-1340.14(f) (2001). There is no question that a worksheet, prepared and submitted by the State, purporting to list a defendant's prior convictions is, without more, insufficient to satisfy the State's burden in establishing proof of prior convictions. *See State v. Hanton*, 140 N.C. App. 679, 689, 540 S.E.2d 376, 382 (2000). Thus, the question here is whether the comments by defendant's attorney constitute a "stipulation" to the prior convictions listed on the worksheet submitted by the State.

In *Hanton*, the defendant on appeal challenged the trial court's calculation of his prior record level. *Id.* at 688-89, 540 S.E.2d at 382. The State had not presented any evidence as to the defendant's prior convictions other than a work sheet and a computer printout. *Id.* at

689, 540 S.E.2d at 382. The Court reviewed the following exchange that occurred between defense counsel, the prosecutor, and the trial court:

> "[THE PROSECUTOR]: [T]he State would like to present a work sheet on Mr. Hanton. If I may approach, Your Honor.
>
> THE COURT: All right.
>
> [THE PROSECUTOR]: Mr. Hanton, by the State's reckoning, has 18 prior points, making him a Level 5.
>
> . . . .
>
> THE COURT: Mr. Farfour, with the exception of the kidnapping charge, is there any disagreement about the other convictions on there?
>
> [THE DEFENSE ATTORNEY]: No, Your Honor.
>
> THE COURT: All right.
>
> [THE PROSECUTOR]: If I may approach, Your Honor, with that and the computer documentation supporting the charges."

*Id.* The Court concluded that this colloquy "might reasonably be construed as an admission by defendant that he had been convicted of the other charges appearing on the prosecutor's work sheet." *Id.* at 690, 540 S.E.2d at 383.

Likewise, we hold that the statements made by the attorney representing defendant in the present case may reasonably be construed as a stipulation by defendant that he had been convicted of the charges listed on the worksheet. We also note that defendant has not asserted in his appellate brief that any of the prior convictions listed on the worksheet do not, in fact, exist. This assignment of error is overruled.

For the reasons stated herein, we find no prejudicial error in defendant's trial or sentencing.

No error.

Judges WYNN and THOMAS concur.