STATE OF NORTH CAROLINA
v.
KENNETH JOEL CUPID
No. COA05-331
North Carolina Court of Appeals
Filed February 7, 2006
This case not for publication
Forsyth County No. 02 CRS 63698, 02 CRS 63923-24, 02 CRS 63926.
Attorney General Roy Cooper, by Special Deputy Attorney General Kathleen M. Waylett, for the State.
Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Kelly D. Miller, for defendant-appellant.
LEWIS, Judge.
Kenneth Joel Cupid ("defendant") appeals his conviction for four counts of robbery with a dangerous weapon. For the reasons discussed herein, we hold defendant received a trial free of prejudicial error.
The State's evidence presented at trial tends to show the following: On 25 October 2002, Marcia Wooliver ("Wooliver") was working as a cashier at Idol's Food Mart ("Idol's"), a convenience store located in Winston-Salem, North Carolina. At approximately 9:30 p.m., defendant and another individual entered Idol's, announced "this is an armed robbery[,]" and approached the front register. Defendant pointed a gun at Wooliver and demanded she give him money. Wooliver gave defendant approximately $212.00 in cash from the store's cash register, and defendant and the other individual fled the store.
On 28 October 2002, Lucia Cisneros ("Cisneros") was working with her son at Micelania Asli, a Mexican food products store located in Winston-Salem. At approximately 9:30 p.m., defendant entered the store, pointed a gun at Cisneros, and demanded she open the store's cash register. After Cisneros opened the register, defendant reached inside, took approximately $3,000.00 in cash from it, and fled the store.
On 31 October 2002, Samuel Davis ("Davis") was working at Don Samuel, a convenience store located in Winston-Salem. At approximately 9:30 p.m., defendant entered the store, pointed a gun at Davis, demanded money, and then threatened to shoot him. Davis gave defendant approximately $2,000.00 in cash, and defendant fled the store.
On 4 November 2002, Elizabeth Scales ("Scales") was working at Bojangles, a fast-food restaurant located in Winston-Salem. At approximately 9:30 p.m., defendant entered the office of Bojangles and instructed Scales to open the safe. As defendant pulled a gun from his pocket, Tanda Reece ("Reece") approached the office. Defendant grabbed Reece, pointed the gun at her, and demanded she open the safe. Defendant thereafter took approximately $200.00 in cash from the safe and fled.
Defendant was subsequently arrested and indicted for four counts of robbery with a dangerous weapon. Defendant's case proceeded to trial, and on 19 August 2004, the jury returned a verdict of guilty on each charge. After determining defendant had a prior record level IV and thirteen prior record points, the trial court sentenced defendant to a total of 384 to 500 months imprisonment. Defendant appeals.
We note initially that defendant's brief contains arguments supporting only three of the nine original assignments of error on appeal. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those issues properly preserved for appeal.
The issues on appeal are whether the trial court erred by: (I) denying defendant's motion to dismiss the charges; (II) instructing the jury regarding the armed robbery charges; and (III) sentencing defendant as a prior record level IV offender.
Defendant first argues the trial court erred by denying his motion to dismiss the charges against him. Defendant asserts the State failed to produce sufficient evidence to withstand the motion. We disagree.
To withstand a motion to dismiss a charge of robbery with a dangerous weapon, the State must present substantial evidence tending to show the defendant: (1) unlawfully took or attempted to take personal property from a person or in the presence of another; (2) by the use or threatened use of a dangerous weapon, implement, or means; and (3) thereby endangering or threatening the life of a person. State v. Kemmerlin, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002); N.C. Gen. Stat. § 14-87(a) (2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). "In ruling on a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." Kemmerlin, 356 N.C. at 473, 573 S.E.2d at 889 (citation omitted).
In the instant case, defendant contends the State failed to offer sufficient evidence to demonstrate he used a dangerous weapon during the robbery because "all the evidence showed the gun allegedly employed by [defendant] in these robberies was not a dangerous weapon capable of threatening or endangering the life of the victim[s]." To support his contention, defendant cites the trial testimony of witnesses and law enforcement officers, many of whom noted the odd condition of the weapon used during the robberies and the abundance of silver paint along its firing mechanism. However, while we recognize that several of the witnesses described the gun as worn and law enforcement officials could only fire it after "manipulat[ing] [its] hammer" with a vice for "[a] couple of minutes[,]" we are not persuaded this evidence entitled defendant to a dismissal of the charges against him.
Our Supreme Court has previously held that "[w]hether an instrument can be considered a dangerous weapon depends upon the nature of the instrument, the manner in which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use." State v. Peacock, 313 N.C. 554, 563, 330 S.E.2d 190, 196 (1985) (citations omitted). "In determining whether a robbery with a particular implement constitutes a violation of [N.C. Gen. Stat. § 14-87], `the determinative question is whether the evidence was sufficient to support a jury finding that a person's life was in fact endangered or threatened.'"State v. Joyner, 312 N.C. 779, 782, 324 S.E.2d 841, 843-44 (1985) (quoting State v. Alston, 305 N.C. 647, 650, 290 S.E.2d 614, 616 (1982)).
Here, the State presented testimony tending to show a live bullet was found in the firing chamber of the gun, and although it involved some difficulty, the gun could fire the bullet. On cross-examination, Greensboro Police Department Officer William Carlton Phoenix ("Officer Phoenix"), a forensic specialist who investigated the gun, agreed it "was virtually inoperable by the average person." Nevertheless, when asked whether it was correct that he "pulled the trigger when [he] first got it and it wouldn't pull," Officer Phoenix replied, "I'm not sure. I was not going to hold this gun and actually fire it." Officer Phoenix elaborated as follows:
I was more concerned with the safety of my hand than the operation of the gun and the firearm was  it had cardboard taped as a gun handle and knowing that the slide was stuck  a bullet when it's discharged creates a tremendous amount of pressure and if that slide is not going to move, the pressure has to go somewhere and I didn't feel safe holding the gun if I was going to discharge it that way.
Officer Phoenix's testimony corroborated that of Greensboro Police Department Officer B.J. Coble ("Officer Coble"), who confiscated the gun following defendant's arrest and testified that while he "was unable with [his] strength to get the slide to the rear, . . . the hammer [of the gun] was to the rear[,]" and "if the hammer were to come forward, it's very possible th[e] weapon could have fired."
In Joyner, the Supreme Court laid out a set of evidentiary rules to use in determining whether the State has satisfied its burden where the instrument used by the defendant in a robbery appears to be, but may not in fact be, a firearm or dangerous weapon. In State v. Allen, 317 N.C. 119, 124-25, 343 S.E.2d 893, 897 (1986), the Court summarized these rules as follows:
(1) When a robbery is committed with what appeared to the victim to be a firearm or other dangerous weapon capable of endangering or threatening the life of the victim and there is no evidence to the contrary, there is a mandatory presumption that the weapon was as it appeared to the victim to be. (2) If there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened. (3) If all the evidence shows the instrument could not have been a firearm or other dangerous weapon capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury.
The State's evidence in Joyner tended to show that, when recovered by law enforcement officials, the weapon allegedly used by the defendant was unloaded and did not have its firing pin. In concluding the State's evidence was nevertheless sufficient to withstand a motion to dismiss, the Court emphasized that the firearm was recovered approximately six hours after the robbery and
[a]ssuming . . . [the] evidence tended to show that the rifle in question was unloaded and without a firing pin at the time the robbery was committed, it was [only] some evidence of the nonexistence of the element of danger or threat to life. But cf., Sloan v. Light Co., 248 N.C. 125, 102 S.E.2d 822 (1958). (As a general rule, proof of the existence of a condition at a given time does not raise a presumption that the same condition existed previously.) Such evidence only removed the mandatory presumption in the present case and required the trial court to permit the jury also to consider a possible verdict of guilty of the lesser included offense of common law robbery. See State v. Alston, 305 N.C. 647, 290 S.E.2d 614 (1982). It was not, however, so compelling as to prevent a permissive inference of danger or threat to life or to require a directed verdict in the defendant's favor on the armed robbery charge.
312 N.C. at 784, 324 S.E.2d at 845.
We believe the rationale of Joyner applies in the instant case. Here, the weapon allegedly used by defendant was confiscated approximately a week after the robbery of Bojangles. Although evidence tended to show the gun was layered in silver paint and difficult to fire when it was recovered, this evidence is not "so compelling as to prevent a permissive inference of danger or threat to life or to require a directed verdict in the defendant's favor on the armed robbery charge." See id. Instead, noting that the testimony of the law enforcement officers suggests the paint and age of the weapon actually made it more dangerous to operate and handle, we conclude any evidence regarding the gun's poor condition only "removed the mandatory presumption in the present case and required the trial court to permit the jury also to consider a possible verdict of guilty of the lesser included offense of common law robbery." See id.; see also State v. Thompson, 297 N.C. 285, 288-89, 254 S.E.2d 526, 528 (1979) ("We cannot perceive how the victims in the instant case could have determined with certainty that the firearm was real unless defendant had actually fired a shot. We would not intimate, however, that a robbery victim should force the issue merely to determine the true character of the weapon."); State v. Quick, 60 N.C. App. 771, 773, 299 S.E.2d 815, 816 (1983) ("[The victim] was not bound to test the character of the projectile which would emanate from the barrel of what appeared to her to be a sawed-off shotgun before handing over the money from the cash drawer. When she was told that she would be shot if she hit the drawer, [the victim] was not required to wait and see if the trigger would be pulled if she disobeyed the life-threatening command."). Therefore, as the trial court properly denied defendant's motion to dismiss the charges against him and instructed the jury on both armed and common law robbery, defendant's first argument fails.
Defendant next argues the trial court committed plain error in its armed robbery instructions. Defendant asserts the trial court's instructions allowed the jury to convict him without first finding the gun was a dangerous weapon likely to cause death or serious bodily injury. We disagree. Our appellate courts apply the plain error rule "'cautiously and only in the exceptional case'" where
"after reviewing the entire record, it can be said the claimed error is a `fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or `where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has "`resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to `seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said `the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'"
State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Thus, "even when the `plain error' rule is applied, `[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" Odom, 307 N.C. at 660-61, 300 S.E.2d at 378 (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)) (alteration in original). "In deciding whether a defect in the jury instruction constitutes `plain error,' the appellate court must examine the entire record [to] determine if the instructional error had a probable impact on the jury's finding of guilt." Odom, 307 N.C. at 661, 300 S.E.2d at 378-79 (citation omitted).
In the instant case, the trial court instructed the jury in pertinent part as follows: Members of the jury, the defendant has been charged with four counts of robbery with a dangerous weapon, a firearm, which is the taking and carrying away [of] personal property of another from his or her person or in his or her presence without his or her consent by endangering or threatening a person's life with a dangerous weapon, the taker knowing that he was not entitled to take the property and intending to deprive another of its use permanently.
For you to find the defendant guilty as to each count of these offenses, the State must prove seven things beyond a reasonable doubt.
. . . .
Sixth, as to each count, that the defendant had a dangerous weapon, a firearm, in his possession at the time he obtained the property or that it reasonably appeared to the victim that a dangerous weapon or firearm was being used, in which case you may but are not required to infer that the said instrument was what the defendant's conduct represented it to be. A dangerous weapon is a weapon which is likely to cause death or serious bodily injury.
. . . .
So, if you find from the evidence beyond a reasonable doubt that on or about the alleged date as to each count, the defendant had in his possession a dangerous weapon and took and carried away property from a person or in the presence of a person without his or her voluntary consent as to each count, by endangering or threatening that person or another person's life with the use or threatened use of a dangerous weapon, the defendant knowing he was not entitled to take the property and intending to deprive that person of its use permanently, it would be your duty to return a verdict of guilty of robbery with a dangerous weapon or firearm as to each count.
Defendant contends these instructions "stated that the gun allegedly used by [defendant] was a deadly weapon per se" and"clearly relieved the jury of its duty to apply the definition of a dangerous weapon to the gun used in these robberies and to determine whether the virtually inoperable gun was, in fact, a dangerous weapon." We cannot agree.
Although we recognize the trial court twice referred to the alleged instrument as "a dangerous weapon, a firearm," we note that after providing the proper definition of a "dangerous weapon," the trial court instructed the jury that in order to convict defendant of the offenses, the jury must "find from the evidence beyond a reasonable doubt" that defendant "had in his possession a dangerous weapon and took and carried away property from a person or in the presence of a person without his or her voluntary consent as to each count, by endangering or threatening that person or another person's life with the use or threatened use of a dangerous weapon[.]" These instructions did not relieve the jury of its responsibility to determine whether the instrument used by defendant was "dangerous" and whether a person's life was endangered or threatened by its use, nor did they include the "mandatory presumption" that the weapon was dangerous. Instead, the instructions properly utilized the "permissive inference" of Allen, see 317 N.C. at 124, 343 S.E.2d at 897, and we note that, following the armed robbery instructions, the trial court properly instructed the jury regarding the lesser-included offense of common law robbery. See Joyner, 312 N.C. at 784, 324 S.E.2d at 845. In light of the foregoing, we are not persuaded the trial court's jury instructions contained any error which "had a probable impact on the jury's finding of guilt." See Odom, 307 N.C. at 661, 300 S.E.2d at 379. Therefore, we conclude the trial court did not commit plain error in its instructions to the jury, and accordingly, defendant's second argument fails.
Defendant's final argument is that the trial court erred by sentencing him as a prior record level IV offender. Defendant asserts the record is insufficient to demonstrate he stipulated to the classification of his prior out-of-state conviction for first-degree forcible rape. We disagree.
Before sentencing a defendant convicted of a felony, the trial court must determine the defendant's prior record level by calculating the sum of the points assigned to his prior convictions. N.C. Gen. Stat. § 15A-1340.14(a) (2003). "[A] conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony . . . ." N.C. Gen. Stat. § 15A-1340.14(e). "The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists," N.C. Gen. Stat. § 15A-1340.14(f), and
[i]f the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.
N.C. Gen. Stat. § 15A-1340.14(e).
"There is no question that a worksheet, prepared and submitted by the State, purporting to list a defendant's prior convictions is, without more, insufficient to satisfy the State's burden in establishing proof of prior convictions." State v. Eubanks, 151 N.C. App. 499, 505, 565 S.E.2d 738, 742 (2002). However, a prior conviction may be proven by any of the following methods:
(1) Stipulation of the parties.
(2) An original or copy of the court record of the prior conviction.
(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.
(4) Any other method found by the court to be reliable.
N.C. Gen. Stat. § 15A-1340.14(f).
Our Supreme Court has recently held that "during sentencing, a defendant need not make an affirmative statement to stipulate to his or her prior record level . . ., particularly if defense counsel had an opportunity to object to the stipulation in question but failed to do so." State v. Alexander, 359 N.C. 824, 829, 616 S.E.2d 914, 918 (2005). Therefore, depending on the circumstances, a defense counsel's statements and/or inaction during sentencing may represent a stipulation to the defendant's prior record level. See, e.g., id. at 830, 616 S.E.2d at 918 (concluding defendant stipulated to convictions listed on State's worksheet where his counsel "specifically directed the trial court to refer to the worksheet to establish that defendant had no prior felony convictions" and made statements indicating "not only that [he] was cognizant of the contents of the worksheet, but also that he had no objections to it"); State v. Mullican, 329 N.C. 683, 686, 406S.E.2d 854, 855 (1991) (concluding defendant stipulated to finding of aggravating factors where defense counsel "made a statement which was consistent with the statement of the prosecuting attorney" and declined "invitation . . . to object" when "the prosecuting attorney said he would summarize the State's evidence with the permission of the defendant").
In the instant case, the following pertinent exchange occurred during sentencing:
THE COURT: Are you ready for sentencing, Madam D.A.?
THE STATE: Yes, Your Honor. Your Honor, if I may approach with his record level work sheet showing his prior convictions. That makes him record Level 4 for sentencing.
THE COURT: [Defense counsel], any contention on the record level for the DWI, 2-26-02 in Forsyth County. We have a first degree rape conviction on November 18, `94; a robbery with a dangerous weapon conviction on August 20, `03, which is on appeal, I believe. Fleeing to elude arrest and possession of a firearm by a felon on August 20, `03.
Other than that which is on appeal, do you contest the other two or do you agree with those based on what you observed as his convictions?
DEFENSE COUNSEL: Based on what my client tells me, Your Honor, that appears correct.
THE COURT: I'll hear from [the parties] concerning sentencing at this point. . . .
. . . .
THE STATE: Thank you, Your Honor. Your Honor, as you can see from his record level, he's getting some violent crimes pretty quickly. . . .
Although he concedes the State met its burden of proving the existence of his prior conviction in New York for first-degree forcible rape, defendant, relying on this Court's opinion in State v. Hanton, 140 N.C. App. 679, 540 S.E.2d 376 (2000), contends the State failed to present sufficient evidence to demonstrate the conviction was substantially similar to a Class C felony in North Carolina. However, we note the first-degree forcible rape charge was listed as a Class C felony on the State's worksheet, which was submitted to the trial court and "appear[ed] correct" to defense counsel. Furthermore, defense counsel did not object either to the State's reference to defendant as "record Level 4 for sentencing" or the trial court's later conclusion that "defendant for sentencing purposes is prior record Level 4." While we recognize that in Hanton, this Court held a similar colloquy did not represent a "stipulat[ion] that the out-of-state convictions were substantially similar to felony charges under North Carolina law which are classified as Class I felonies or higher," id. at 690, 540 S.E.2d at 383, in light of the circumstances detailed above, we conclude defense counsel's conduct at sentencing may reasonably be construed to "constitute[] a stipulation of [defendant's] prior record level pursuant to N.C. Gen. Stat. § 15A-1340.14(f)(1)." See Alexander, 359 N.C. at 830, 616 S.E.2d at 918. Thus, we also conclude the trial court did not err by sentencing defendant as a prior record level IV offender. Accordingly, defendant's final argument fails.
In sum, we hold defendant received a trial free of prejudicial error. No error.
Judges WYNN and STEELMAN concur.
Report per Rule 30(e).